ALLEN, Judge.
Herman Duke, appellant in this case, appeals a final judgment of conviction and sentence against him for the crime of second degree murder.
The appellant was indicted by the grand jury for the killing of Marvin Beasley. At the trial of the appellant the prosecution presented the testimony of several people near the scene of the crime. The chief witness for the prosecution was David C. Wildes.
Wildes testified to the events immediately preceding the shooting of Marvin Beasley and immediately thereafter. The scene of the shooting was outside the Pub Tavern in Manatee County. Wildes was inside the Pub Tavern when the decedent arrived. He testified to the decedent’s behavior inside the Pub Tavern. He also testified to the appellant’s arrival outside the Pub Tavern. Wildes never actually saw the shooting.
On May 3, 1967, the day of the shooting, Wildes testified he saw Herman Duke, appellant, in his car outside of the Pub Tavern. He saw Duke get out of his automobile with a shotgun in his hands and stand beside his automobile.
Wildes testified that he saw Marvin Beasley that day, May 3, 1967, inside the Pub Tavern. He saw Beasley walk out of the tavern and over to the side of appellant’s car. He saw Beasley start to open the door then turn and walk around the front of the car. He further testified as follows:
“Q. What did the defendant do at that time?
“A. He was just standing there.
* * * * * *
“Q. Who do you have reference to now when you say he was just standing there ?
“A. The defendant.
“Q. Herman Duke ?
“A. Yes.
% ^ 5}c % :jí
“Q. What did he do with the shotgun?
“A. Well, Beasley walked around the car, see, he went out of my sight at the time. I didn’t see him. He was standing there just holding it.
“Q. Who was ?
“A. The defendant.
*757 “Q. Then what did the defendant do?
“A. They evidently was talking for approximately, I don’t know, maybe a minute or longer.
“Q. Did you hear what they were saying?
“A. No.
“Q. Then what did the defendant do?
“A. The next thing I heard he just shot.
“Q. You heard the shot?
“A. Yes.
“Q. Were you watching the defendant at that time?
“A. Yes.
“Q. Where were you standing at that time?
“A. In the door.
“Q. What did the defendant do after • firing the shot?
“A. He laid the gun back in the car and walked in the Pub and said, ‘Call the law, I just shot Marvin.’
“Q. Then what did he do ?
“A. He turned around and walked back out and got in his car and drove off.
“Q. After he put the shotgun back in his car what did he do ?
“A. After he put the shotgun in I just walked out where the deceased was lying.
“Q. Did you see Marvin Beasley there?
“A. Yes.
“Q. Did you then look at Beasley?
“A. Yes.
“Q. What did you observe?
“A. I seen he had been shot in the chest.
“Q. Did you see any motion from him?
“A. He didn’t say anything, just the veins on his neck — he kind of turned his head a little bit.
“Q. Did you see any weapons in his hands ?
“A. No.
“Q. Did you see any weapons in the area around him?
“A. No.
“Q. Did you at any time see any weapon in Beasley’s hands that day?
“A. No.
“Q. Was anybody else out there when you went out to look at Beasley on the ground?
“A. I didn’t see anybody.
“Q. Did anyone else arrive ?
“A. Yes.
“Q. Do you know who ?
“A. I didn’t particularly know but they say it was his wife.
“Q. Did you know any of these people before this happened?
“A. No.
“Q. What were you doing at the Pub Tavern out there?
“A. I just took off from work and I thought I would have my car fixed, and I thought I would stop for a beer.
******
“Q. After the defendant got out of the car until you heard the shot, were you watching him all this time ?
“A. Yes.
“Q. Could you see him all this time until you heard the shot fired?
“A. Yes, sir.
*758 * * * * * *
“Q. While you were watching this defendant and after he got out of the car and until you heard the shot, did you see anyone else, anyone at all near his car other than him?
“A. No, I couldn’t see anyone.
“Q. Did you see anyone attack him?
“A. No.”
Subsequently, on cross-examination, David C. Wildes was questioned by the state’s attorney as follows: (p. 277)
“Q. Beasley was saying that he and Duke had been in an argument, right ?
“A. Yes, sir.
“Q. He was talking in angry fashion ?
“A. I don’t know how he would talk angry.
“Q. He was angry?
“A. Yes.
“Q. Would you say he was a husky man?
“A. I guess so.
“Q. As a matter of fact, what caused you to get up off your bar stool having a quiet beer and go to the front door is that the man in question, Beasley, went out the front door when this man drove up?
“A. Yes, I wanted to see what was going on.
“Q. You knew a fight was about to happen ?
“A. I figured they were arguing.
“Q. You figured there was going to be a fight?

“Q. In all fairness, you didn’t know any of these people, but from what Beasley had been saying in that bar room and the way he looked and the way he acted and the way he ran to the front door, you figured there was going to be a fight and that is what you were doing up off the bar stool standing in the front door; isn’t that a fair statement?
******
“THE COURT: Mr. Wildes, answer the questions to the best of your ability.
“THE WITNESS: He didn’t run and he walked. I thought that there was going to be an argument.”
Linda Dorics, a witness, testified that she observed appellant earlier in the Highway Bar at about 1:00 P.M. on May 3, 1967, and heard appellant say, in effect, that he would get even with the deceased even if he had to kill him.
Nancy Golden, another witness, was also in the Highway Bar at the same time and heard appellant state that he was going to kill the deceased.
The appellant’s testimony was to the effect that he acted in self defense because the deceased. lunged at him with a knife. There were other witnesses who testified but none of them saw the deceased with a knife when confronted by appellant.
From the record we find sufficient evidence to justify the jury bringing a verdict of guilty of murder in the second degree against appellant.
We can find no error in the record upon which we could base a reversal of this conviction and sentence of the appellant. We have carefully considered the arguments propounded by the appellant and find them to be without merit.
Therefore, for the above reasons, we must and do affirm the final judgment of conviction and sentence against appellant.
Affirmed.
LILES, C. J., and PIERCE, J., concur.